DECISION ON OBJECTIONS TO THE MAGISTRATE'S DECISION ON MOTIONS
{¶ 1} Relator, Daniel Paul Poignon, filed this original action seeking a writ of mandamus ordering respondent, the Ohio Board of Pharmacy ("pharmacy board"), to process his application to be licensed as a pharmacist, and to either grant his application or offer him the opportunity for a hearing. In response, the pharmacy board filed a motion to dismiss. Relator filed a memorandum in opposition to the motion to dismiss and a motion for summary judgment.
 {¶ 2} Pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate, who issued a notice converting the pharmacy board's motion to dismiss to a motion for summary judgment. After the matter was briefed, the magistrate issued a decision including findings of fact and conclusions of law. (Attached as Appendix A.) In her decision, the magistrate found that relator had been previously licensed in Ohio as a pharmacist, and that his license had been permanently revoked after proper notice and a hearing.[1] The magistrate therefore recommended that we grant the pharmacy board's motion for summary judgment, deny relator's motion for summary judgment, and deny the requested writ of mandamus.
 {¶ 3} Relator has filed a general objection to the magistrate's decision, largely restating the same arguments he raised before the magistrate. Relator essentially contends that since a physician whose medical license has been "revoked" by the medical board may seek its reinstatement, he, as a pharmacist, may seek reinstatement of his permanently revoked pharmacy license.
 {¶ 4} We first note that the medical board and the pharmacy board derive their authority from different sources. Chapter 4729 of the Revised Code applies to the state pharmacy board, while Chapter 4731 applies to the state medical board. When interpreting a statute, words and phrases shall be read in context and given their plain and ordinary meaning, unless the legislature applied a specific meaning to the word or phrase.D.A.B.E, Inc. v. Toledo-Lucas Cty. Bd. of Health,96 Ohio St.3d 250, 255, 2002-Ohio-4172, 773 N.E.2d 536. A statute is ambiguous only when its language is reasonably susceptible to more than one interpretation. Family Medicine Found., Inc. v. Bright,96 Ohio St.3d 183, 185, 2002-Ohio-4034, 772 N.E.2d 1177. However, "* * * an unambiguous statute means what it says." MillstoneDevelopment, Ltd. v. Berry, Franklin App. No. 03AP-531, 2004-Ohio-1215, quoting Hakim v. Kosydar (1977),49 Ohio St.2d 161, 164, 359 N.E.2d 1371.
 {¶ 5} In his objections, referring to Bouquett v. Ohio StateMed. Bd. (1991), 74 Ohio App.3d 203, 598 N.E.2d 672, and related cases,[2] relator states: "Summarily, these cases hold that * * * a state agency may permanently revoke [a license] provided the license holder may seek reinstatement." (Objections, at 2.) Relator's attempt to apply Bouquett generally to any license issued by a state agency is without merit.
 {¶ 6} In Bouquett, the medical board, acting pursuant to R.C. 4731.22(B)(9), revoked the medical license of a physician based on his felony conviction in federal court. Approximately two years later, the physician asked the medical board to either reconsider its decision to revoke his medical license or permit him to apply for a new license. The physician claimed he was entitled to seek reinstatement because the term "revoke" did not denote a permanent condition prohibiting reinstatement, while the medical board contended the term "reinstatement" was intended to apply only to license suspensions, not revocations. Because the legislature did not define the term "revoke" as used in R.C.4731.22(B), we applied its plain and ordinary meaning and held "there is nothing in the definition of `revoke' which compels this court to conclude that this term contemplates only a permanent and irreversible condition." Id., at 208. The issue inBouquett was not that the medical board exceeded its authority by imposing a permanent revocation, but rather that its order did not clearly state its revocation of a medical license was to be permanent. Bouquett, at 208.
 {¶ 7} By contrast, the pharmacy board derives its authority to revoke a pharmacy license from R.C. 4729.16(A), where there is no ambiguity in the definition of "revoke" "Revoke," as used in Chapter 4729 of the Revised Code, means "to take action against a license rendering such license void and such license may not bereissued. `Revoke' is an action that is permanent against thelicense and licensee." Ohio Adm. Code 4729-9-01(E) (Emphasis added).[3] Thus, the pharmacy board does not need to specify in its order that its revocation of a pharmacy license is permanent, as Ohio Adm. Code 4729-9-01(E) has already done so. In the absence of any evidence that the legislature did not mean what it clearly said, we decline relator's invitation to "interpret" a definition that is not ambiguous. The pharmacy board is under no legal duty to either grant relator's application or provide him with a hearing on his attempt to regain his license, as he does not have a legal right to regain it.
 {¶ 8} Additionally, the magistrate correctly stated that relator had an opportunity to appeal the pharmacy board's December 18, 2000 revocation order, but failed to do so in a timely manner. Mandamus is not a substitute for an untimely or failed appeal. State ex rel. Pressley v. Indus. Comm. (1967),11 Ohio St.2d 141, 228 N.E.2d 631, paragraph two of the syllabus;State ex rel. Tran v. McGrath (1997), 78 Ohio St.3d 45, 47,676 N.E.2d 198.
 {¶ 9} Following an independent review of the record, we find the magistrate has properly determined the pertinent facts and applied the salient legal standards. We therefore overrule relator's objections and adopt the magistrate's decision as our own, including its findings of fact and conclusions of law and incorporating the conclusions of law we have set forth above. In accordance with the magistrate's decision, we grant respondent's motion for summary judgment, deny relator's motion for summary judgment, and deny the requested writ of mandamus.
 {¶ 10} Finally, the record shows that on April 23, 2004, the pharmacy board filed a motion to dismiss relator's objections to the magistrate's decision, on the basis that the May 15, 2003 objections were untimely filed. As the court has ruled on the merits of this case, respondent's motion to dismiss is hereby rendered moot.
Objections overruled; writ of mandamus denied; respondent's motion for summary judgment granted; relator's motion for summary judgment denied; and respondent's motion to dismiss rendered moot.
Lazarus, P.J., and Bryant, J., concur.
 (APPENDIX A) IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
[State ex rel.] Daniel Paul Poignon, : Relator, : v. : No. 03AP-178 The Ohio Board of Pharmacy, : (REGULAR CALENDAR) Respondent. :
 MAGISTRATE'S DECISION Rendered on April 28, 2003 IN MANDAMUS ON MOTIONS FOR SUMMARY JUDGMENT {¶ 11} Relator, Daniel Paul Poignon, has filed this original action requesting that this court issue a writ of mandamus ordering respondent, The Ohio Board of Pharmacy ("board"), to process his application to be licensed as a pharmacist in accordance with Ohio Revised Code Chapters 4729. and 119.
 Findings of Fact {¶ 12} 1. Relator was originally licensed in the state of Ohio as a pharmacist.
 {¶ 13} 2. On September 8, 1999, relator's license was summarily suspended pursuant to R.C. 3719.121(B). The suspension was based upon relator's theft of over 1,888 unit doses of certain drugs from his employer, Rite Aid, between May 1, 1998 and July 6, 1999. Ultimately, on October 28, 1999, relator was convicted of two counts of theft of drugs, in violation of R.C.2913.02, felonies of the fourth degree.
 {¶ 14} 3. Thereafter, on November 6, 2000, the board held a hearing to determine what action should be taken in light of relator's actions and his convictions. The board determined that relator had violated R.C. Sections 4729.16(A)(1), (2), (3) and (5). The board removed the summary suspension order which had been issued and determined that, pursuant to R.C. 4729.16, relator's license should be revoked and his pharmacy identification card and wall certificate be returned to the board.
 {¶ 15} 4. Relator was notified that, pursuant to R.C. 119.12, he could appeal from the board's order by filing a notice of appeal with the board and the appropriate court within 15 days after the mailing of the board's order.
 {¶ 16} 5. On January 2, 2001, relator filed a notice of appeal with the board and the Lucas County Court of Common Pleas. Because relator failed to timely file his notice of appeal with the court, the board filed a motion to dismiss. On March 9, 2001, the common pleas court determined that relator had missed the deadline for the filing of his notice of appeal with the court, albeit by only one day, and that relator had failed to show or respond with any reason to excuse him from this time limitation. As such, the board's motion was granted and relator's appeal was dismissed.
 {¶ 17} 6. On October 17, 2002, relator submitted an application to be licensed as a pharmacist pursuant to R.C.4729.07.
 {¶ 18} 7. By letter dated October 22, 2002, the board notified relator as follows:
"The Board has received your letter dated October 4, 2002, and your application material. I notice that you have indicated that you sent a copy of that correspondence to your attorney, Robert Noble. As my staff has on several occasions unequivocally informed Mr. Noble, you should review your Board Order and also Rule 4729-9-01(E) of the Ohio Administrative Code. This provision states that a revocation is permanent against the license and the licensee. In short, your license was revoked, and that revocation is permanent as to you as well. Accordingly, we cannot process your application."
 {¶ 19} 8. Thereafter, relator filed the instant mandamus action in this court requesting that this court order the board to process his application for a license and to either grant the license or offer relator an opportunity for a hearing.
 {¶ 20} 9. The board filed a motion to dismiss which this magistrate converted to a motion for summary judgment. Relator has also filed a motion for summary judgment.
 {¶ 21} 10. The motions for summary judgment are currently before this magistrate for review.
 Conclusions of Law {¶ 22} A motion for summary judgment requires the moving party to set forth the legal and factual basis supporting the motion. To do so, the moving party must identify portions of the record which demonstrate the absence of a genuine issue of material fact. Dresher v. Burt (1996), 75 Ohio St.3d 280. Accordingly, a party moving for summary judgment must satisfy a three-prong inquiry showing: (1) that there is no genuine issue as to any material fact; (2) that the parties are entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, which conclusion is adverse to the party against whom the motion for summary judgment is made.Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64.
 {¶ 23} The facts of this case are undisputed. The only issue before this court is whether or not relator is entitled to have the board process his application to be licensed as a pharmacist after the board had previously revoked his license due to both his criminal convictions and the board's own findings, after hearing, that relator stole over 1,800 unit doses of drugs from his employer and that relator was addicted to liquor or drugs or was impaired physically or mentally to such a degree as to render him unfit to practice pharmacy.
 {¶ 24} R.C. 4729.16 provides, in pertinent part, as follows:
"(A) The state board of pharmacy, after notice and hearing in accordance with Chapter 119. of the Revised Code, may revoke, suspend, limit, place on probation, or refuse to grant or renew an identification card * * *, if the board finds a pharmacist * * *:
"(1) Guilty of a felony or gross immorality;
"(2) Guilty of dishonesty or unprofessional conduct in the practice of pharmacy;
"(3) Addicted to or abusing liquor or drugs or impaired physically or mentally to such a degree as to render the pharmacist * * * unfit to practice pharmacy;
"* * *
"(5) Guilty of willfully violating, conspiring to violate, attempting to violate, or aiding and abetting the violation of any of the provisions of this chapter, sections 3715.52 to3715.72 of the Revised Code, Chapter 2925. or 3719. of the Revised Code, or any rule adopted by the board under those provisions;
"* * *
"(B) Any individual whose identification card is revoked, suspended, or refused, shall return the identification card and license to the offices of the state board of pharmacy within ten days after receipt of notice of such action."
 {¶ 25} Ohio Adm. Code Section 4729-9-01 provides the following definitions:
"(E) `Revoke', as used in Chapters 3719. and 4729. of the Revised Code, means to take action against a license rendering such license void and such license may not be reissued. `Revoke' is an action that is permanent against the license and licensee.
"(F) `Suspend', as used in Chapters 3719. and 4729. of the Revised Code, means to take action against a license rendering such license without force and effect for a period of time as determined by the state board of pharmacy. The board may require that an individual whose license has been suspended may not be employed by or work in a facility licensed by the state board of pharmacy to possess or distribute dangerous drugs during such period of suspension.
"* * *
"(H) `Refuse to grant or renew', as used in Chapter 4729. of the Revised Code, means to deny original or continued licensure for a period of at least twelve months. After twelve months or such period of time as the individual board order may require, a pharmacist * * * who desires to attain such status by licensure, and whose license the state board of pharmacy has refused to grant or renew, may make application to the board for issuance of a new license. A pharmacist, or an individual who desires to attain such status by licensure, whose license the state board of pharmacy has refused to grant or renew must meet any requirements established by the board or must pass any examination required by the board."
 {¶ 26} The board asserts that relator's license has been revoked and that, pursuant to Ohio Adm. Code 4729-9-01(E), the action is permanent and relator is not entitled to a hearing on his new application because relator's license to practice as a pharmacist has been permanently revoked. On the other hand, relator contends that the language of R.C. 4729.16 is "substantially identical" to the disciplinary language used in reference to the Ohio State Medical Board ("Medical Board") in R.C. Chapter 4731., and cites several cases where this court found that the Medical Board has the authority to reinstate a revoked license. For the reasons that follow, this magistrate disagrees with relator's interpretation of the law and, instead, agrees with the board's inter-pretation.
 {¶ 27} Relator cites Bouquett v. Ohio State Med. Bd.
(1991), 74 Ohio App.3d 203, DeBlanco v. Ohio State Med. Bd.
(1992), 78 Ohio App.3d 194, Williams v. Ohio State Med. Bd.
(1992), 78 Ohio App.3d 743, and Roy v. Ohio State Med. Bd.
(1995), 101 Ohio App.3d 352. In Bouquett, the plaintiff had been licensed as a medical doctor until February 1987. Following an administrative hearing conducted pursuant to R.C. Chapter 119., the Medical Board revoked plaintiff's medical license for violating R.C. 4731.22(B)(9). The violation arose from the July 1986 conviction of plaintiff on a federal felony count. In August 1989, the plaintiff requested that the Medical Board either reconsider its prior decision revoking his license, or allow plaintiff to apply for a new medical license. The Medical Board refused and the plaintiff filed an action seeking declaratory relief in the form of a declaration that the revocation of a medical license does not forever prohibit a practitioner from seeking reconsideration of the revocation or the issuance of a new medical license upon proper application.
 {¶ 28} The trial court found in favor of the Medical Board and concluded that R.C. Chapter 4731. authorized only the reinstatement of a license which had been suspended.
 {¶ 29} On appeal, this court concluded that the trial court erroneously denied relief as to that aspect of plaintiff's complaint seeking a declaration that the Medical Board had the authority to reinstate him to the practice of medicine in this state. This court noted that R.C. Chapter 4731. had been substantially amended. Specifically, this court noted as follows:
"In 1975, the General Assembly amended R.C. 4731.22 by deleting much of the former language and by adding subsections (A) and (B). New subsection (B) provided as follows:"
`The board shall, to the extent permitted by law, limit, reprimand, revoke, suspend, place on probation, refuse to register, or reinstate a certificate for one or more of the following reasons[.]'
"In light of the above changes in the Revised Code, this court concludes that the General Assembly intended by the 1975 amendments to R.C. 4731.22 to expand the power of the board to include the review of applications for reinstatement to the practice of medicine. * * *
"* * *
"While the board suggests that the term `reinstatement' is utilized in R.C. 4731.22 only in reference to suspensions, as evidenced by the provisions of R.C. 4731.22(G), such argument ignores the fact that this subsection of R.C. 4731.22 was not added until 1982 and subsequent to the 1975 amendments set forth above. This court reads R.C. 4731.22(G) as stating only the requirement that the board specify, in suspension orders, the conditions which must be met before a suspended physician is reinstated to the practice of medicine. There is no indication that the General Assembly intended, by adopting this subsection, to restrict the authority of the board to otherwise reinstate a physician whose license has been revoked."
Bouquett at 207.
 {¶ 30} Likewise, in DeBlanco, this court noted the amendment to R.C. 4731.22(G), and concluded that a doctor whose license has been revoked may apply for relicensure to engage in the practice of medicine.
 {¶ 31} Contrary to relator's arguments, R.C. 4729.16 is not "substantially identical" to R.C. 4731.22. In fact, R.C. Chapter 4729. provides absolutely no reference to the reinstatement of a license. None of the language found in R.C. Chapter 4731. and referred to by this court in the aforecited cases appears in R.C. Chapter 4729. Further, the Ohio Administrative Code specifically defines the word "revoke" to be permanent against the license and the licensee. As such, this magistrate finds that relator's arguments lack merit while the board's arguments are well-taken.
 {¶ 32} Based on the foregoing, this magistrate finds that relator's motion for summary judgment should be denied; however, respondent's motion for summary judgment should be granted. This magistrate concludes, as a matter of law, that the board is not required to process relator's application or to hold a hearing on his application to be relicensed as a pharmacist in the state of Ohio inasmuch as the board has previously permanently revoked relator's pharmacy license.
[1] The pharmacy board found that relator had stolen more than 1,800 doses of various controlled substances, primarily narcotics (e.g., Dilaudid, Codeine) and stimulants (e.g., Ritalin). Relator was also convicted of two counts of theft of drugs, which are felonies.
[2] See, also, DeBlanco v. Ohio State Med. Bd. (1992),78 Ohio App.3d 194, 604 N.E.2d 212, Williams v. Ohio State Med.Bd. (1992), 78 Ohio App.3d 743, 605 N.E.2d 1311, and Roy v.Ohio State Med. Bd. (1995), 101 Ohio App.3d 352,655 N.E.2d 771.
[3] Ohio Adm. Code 4729-9-01(E) was adopted pursuant to R.C.4729.26, wherein the legislature granted rule-making authority to the pharmacy board. See, R.C. 119.01 et seq. (Administrative Procedure Act).