**[Cite as *Hal v. Ohio Dept. of Edn.*, 2019-Ohio-5081.]**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Martha Hal, | : | |
| Appellant-Appellant, | : | |
| | | No. 18AP-301 |
| v. | : | (C.P.C. No. 17CV-4132) |
| State of Ohio | : | (REGULAR CALENDAR) |
| Department of Education, | | |
| | : | |
| Appellee-Appellee. | | |
| | : | |

D E C I S I O N

Rendered on December 10, 2019

**On brief:** *Farlow & Associates, LLC*, and *Beverly J. Farlow,* for appellant. **Argued:** *Beverly J. Farlow.*

**On brief:** [*Dave Yost*], Attorney General, *Mary L. Hollern,* and *Hannah Stoneburner,* for appellee. **Argued:** *Hannah Stoneburner.*

APPEAL from the Franklin County Court of Common Pleas

BRUNNER, J.

{¶ 1} Appellant-appellant, Martha Hal, appeals from a decision and entry of the Franklin County Court of Common Pleas affirming the resolution of the State of Ohio Board of Education ("Board") which determined that Hal had engaged in conduct unbecoming to the teaching profession, in violation of R.C. 3319.31(B)(1), and denying Hal's applications for a five-year professional principal license and five-year professional special all grades teaching license. For the following reasons, we affirm the common pleas court judgment.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} Hal was employed by Columbus City Schools ("CCS") as a teacher and administrator beginning in 1989. During the 2010-2011 school year, she was employed as a leadership intern assigned to Walnut Ridge High School, which involved duties similar to

those of an assistant principal. Hal was instrumental in implementing a new program for ninth graders called the "Freshman Forgiveness Program" ("FFP"), a program that offered the opportunity to ninth graders to raise a failing grade to a "D" if they met the requirements of the program, including attendance and additional make-up work. The program only applied to core subjects, English, Science, Math, and Social Studies and a student could only be enrolled in the program in one core class per nine-week period. A student needed to attend the program for nine weeks to raise the failing grade for a nine-week period. A student who successfully completed the FFP for a particular grading period could not receive any grade higher than a "D." The FFP was approved by the Board in January 2011 and implemented immediately.

{¶ 3} On June 2 and 10, 2011, Hal's computer username was used to make changes to the grades of eight freshman students, five of whom participated in the FFP. Hal admitted making 7 of the 29 changes for those students because she argued the changes were the result of the FFP and permissible changes. The changes are as follows:

{¶ 4} June 2, 2011 changes:

1. 2:49 pm, Student 1 – final mark in Exploration Lit & Comp 9 was changed from "F" to "D." Appellant admitted making this change.
2. 2:48 pm, Student 1 – first grading period mark in Exploration Lit & Comp 9 changed from "F" to "A." Appellant denied making this change.
3. 2:46 pm, Student 1 – first grading period mark in Physical Science was changed from "F" to "B." Appellant denied making this change.
4. 12:40 pm, Student 2 – final mark in Exploration Lit & Comp 9 was changed from "F" to "D." Appellant admitted making this change.
5. 12:44 pm, Student 2 – final mark in Physical Science changed from "F" to "D." Appellant admitted making this change.
6. 12:36 pm, Student 2 – first grading period mark in Physical Science was changed from "F" to "B." Appellant denied making this change.
7. 12:39 pm, Student 2 – second grading period mark in Exploration Lit & Comp 9 changed from "F" to "B." Appellant denied making this change.
8. 12:37 pm, Student 2 – second grading period mark in Physical Science changed from "F" to "D." Appellant admitted making this change.

9. 2:53 pm, Student 3 – final mark in Physical Science changed from "D" to "C." Appellant denied making this change.

10. 12:28 pm, Student 3 – final mark in Algebra 1 changed from "F" to "D." Appellant admitted making this change.

11. 12:27 pm, Student 3 – first grading period mark in Algebra 1 changed from "F" to "B." Appellant denied making this change.

12. 2:54 pm, Student 3 – third grading period mark in Physical Science changed from "F" to "B." Appellant denied making this change.

13. 12:32 pm, Student 4 – final mark in Physical Science changed from "F" to "D." Appellant admitted making this change.

14. 12:31 pm, Student 4 – first grading period mark in Physical Science changed from "F" to "B." Appellant denied making this change.

15. 12:07 pm, Student 6 – final mark in Physical Science changed from "F" to "C." Appellant denied making this change.

16. 12:06 pm, Student 6 – second grading period mark in Physical Science changed from "F" to "A." Appellant denied making this change.

17. 12:19 pm, Student 7 – final mark in Physical Science changed from "F" to "D." Appellant admitted making this change.

18. 12:17 pm, Student 7 – grading period one mark in Physical Science changed from "F" to "A." Appellant denied making this change.

19. 12:24 pm, Student 8 – final mark in Physical Science changed from "D" to "C." Appellant denied making this change.

20. 12:12 pm, Student 8 – grading period one mark in Physical Science changed from "F" to "A." Appellant denied making this change.

(Ex. 11.)

{¶ 5} Appellant denied making any changes on June 10, 2011:

1. 8:21 am, Student 5 – final exam in French 1 changed from "D" to "B."

2. 8:22 am, Student 5 – final mark in Exploration Lit & Comp 9 changed from "C" to "B."

3. 8:21 am, Student 5- final mark in Physical Science changed from "F" to "C."

4. 8:19 am, Student 5 – first grading period mark in Physical Science changed from "F" to "C."

5. 8:20 am, Student 5 – second grading period mark in Physical Science changed from "F" to "C."

6. 8:20 am, Student 5 – third grading period mark in Physical Science changed from "F" to "C."

7. 8:22 am, Student 5 – final mark in Exploration Lit & Comp 9 changed from "D" to "A."

8. 8:21 am, Student 5 – fourth grading period mark in French 1 changed from "F" to "B."

9. 8:21 am, Student 5 – fourth grading period mark in Physical Science changed from "F" to "C."

(Ex. 11.)

{¶ 6} The Board caused Hal to be notified of its intention to determine whether to deny or permanently deny her pending applications on account of alleged violations of R.C. 3319.31(B)(1) for engaging in conduct that was negligent and/or unbecoming a licensed educator for changing the grades of multiple students for impermissible reasons. Hal timely requested a hearing that was held before a hearing officer over the course of several days, October 24-27, 2016. On January 24, 2017, the hearing officer issued her report and recommendation and concluded that Hal engaged in conduct unbecoming to the teaching profession, in violation of R.C. 3319.31(B)(1). The hearing officer recommended that the Board deny Hal's applications for a 5-year professional principal license and 5-year professional special all grades teaching license and, further, Hal be ineligible to reapply for any license issued by the Board until on or after April 11, 2022 and only after Hal would submit evidence that she completed 16 hours of ethics training.

{¶ 7} Hal filed objections to the report and recommendation. At its April 11, 2017 meeting, the Board issued a resolution in which it accepted the hearing officer's report and recommendation and denied Hal's applications until on or after April 11, 2022, requiring her to submit evidence that she completed 16 hours of ethics training. Hal filed a notice of appeal to the Franklin County Court of Common Pleas under R.C. 119. The common pleas court, acting as an administrative appellate court, affirmed the Board's resolution.

## II. ASSIGNMENTS OF ERROR

{¶ 8} Hal appeals and assigns the following six assignments of error for our review:

[1.] THE TRIAL COURT ABUSED ITS DISCRETION IN FINDING THAT ODE'S RESOLUTION WAS SUPPORTED BY RELIABLE PROBATIVE, AND SUBSTANTIAL EVIDENCE.

[2.] THE LOWER COURT ABUSED ITS DISCRETION WHEN IT FOUND THAT THE HEARING OFFICER DID NOT CRAFT

HER OWN DEFINITION OF WHAT GRADES MEAN AND THAT ODE OFFERED PROBATIVE RELIABLE EVIDENCE TO ESTABLISH THE MEANING OF GRADES AND TO EXPLAIN WHAT CONSTITUTES ACCURATE GRADES.

[3.] THE LOWER COURT ABUSED ITS DISCRETION IN UPHOLDING THE FINDING THAT APPELLANT'S BEHAVIOR CONSTITUTED CONDUCT UNBECOMING TO THE TEACHING PROFESSION.

[4.] THE LOWER COURT ERRED AS A MATTER OF LAW IN STATING THAT RELIABLE, PROBATIVE AND SUBSTANTIAL EVIDENCE IS A QUESTION OF THE ABSENCE OR PRESENCE OF THE REQUISITE AMOUNT OF EVIDENCE.

[5.] THE LOWER COURT ERRED AS A MATTER OF LAW IN FINDING THAT THE SANCTION IMPOSED BY THE BOARD IS IN ACCORDANCE WITH THE LAW.

[6.] THE LOWER COURT ERRED AS A MATTER OF LAW IN VIOLATION OF APPELLANT'S DUE PROCESS RIGHTS.

## III.  ANALYSIS

### A.  Standard of Review

{¶ 9}   When hearing an appeal from a state administrative agency, a court of common pleas "may affirm the order of the agency complained of in the appeal if it finds, upon consideration of the entire record and such additional evidence as the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law."  R.C. 119.12(M).  Without such a finding, "it may reverse, vacate or modify the order or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law."  *Id.*  The Supreme Court of Ohio defined those terms in *Our Place, Inc. v. Ohio Liquor Control Comm.*, 63 Ohio St.3d 570, 571 (1992), as follows:

> (1) "Reliable" evidence is dependable; that is, it can be confidently trusted.  In order to be reliable, there must be a reasonable probability that the evidence is true.  (2) "Probative" evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue.  (3) "Substantial" evidence is evidence with some weight; it must have importance and value.

{¶ 10} An appellate court's standard of review is "more limited than that of the trial court." *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993). In reviewing whether the common pleas court's determination concerning reliable, probative, and substantial evidence does or does not support the agency's order, the appellate court's role is limited to determining whether the common pleas court abused its discretion. *Id.*; *Gallagher v. Ross Cty. Sheriff*, 10th Dist. No. 06AP-942, 2007-Ohio-847, ¶ 15, citing *Lorain City. Bd. of Edn. v. State Emp. Relations Bd.*, 40 Ohio St.3d 257, 261 (1988). Absent an abuse of discretion on the part of the trial court, an appellate court may not substitute its judgment for the judgment of the board or a trial court. *Pons* at 621. However, "on the question of whether the agency's order was in accordance with the law, this court's review is plenary." *Leslie v. Ohio Dept. of Dev.*, 171 Ohio App.3d 55, 2007-Ohio-1170, ¶ 44 (10th Dist.), citing *Univ. Hosp., Univ. of Cincinnati College of Medicine v. State Emp. Relations Bd.*, 63 Ohio St.3d 339, 343 (1992).

{¶ 11} The issue on appeal is whether the common pleas court abused its discretion or committed a legal error when it found that there is reliable, probative, and substantial evidence supporting the Board's resolution. *Pons*; *Lorain City Bd. of Edn.* at 261. An abuse of discretion occurs when a trial court's judgment is unreasonable, arbitrary, or unconscionable. *State ex rel. McCann v. Delaware Cty. Bd. of Elections*, 155 Ohio St.3d 14, 2018-Ohio-3342, ¶ 12. Even under an abuse of discretion standard, however, "no court has the authority, within its discretion, to commit an error of law." *Shaw v. Underwood*, 10th Dist. No. 16AP-605, 2017-Ohio-845, ¶ 25; *State v. Akbari*, 10th Dist. No. 13AP-319, 2013-Ohio-5709, ¶ 7. Thus, " '[a] court abuses its discretion when its ruling is founded on an error of law or a misapplication of law to the facts.' " *Independence v. Office of the Cuyahoga Cty. Exec.*, 142 Ohio St.3d 125, 2014-Ohio-4650, ¶ 49 (O'Donnell, J., dissenting), quoting *Doe v. Natl. Bd. of Med. Examiners*, 199 F.3d 146, 154 (3d Cir.1999).

**B. First Assignment of Error**

{¶ 12} In her first assignment of error, Hal contends that the common pleas court abused its discretion by finding that the Board's resolution was supported by reliable, probative, and substantial evidence. Hal argues that the evidence offered by appellee-appellee, Ohio Department of Education ("ODE"), is inadequate because ODE did not definitively demonstrate that Hal was the person that changed the students' grades.

{¶ 13} ODE introduced Exhibit 11, which is a spreadsheet of multiple grade changes attributed to Hal's username that occurred on June 2 and 10, 2011. On June 2 and 10, 2011, changes were made to the grades of 8 freshman students (29 changes in total), 5 of whom participated in the FFP, by someone using Hal's username. Hal admits to making 7 of the changes but denies making the other changes. Randy Ziemba, who during the 2010-2011 school year was employed as a data analyst for the Student Information System used at that time, Electronic Student Information System, or eSIS, for CCS[1] created Exhibit 11.[2] Ziemba testified that at the end of June or early July every year, the database is frozen, and it cannot be edited anymore. The frozen database is archived. He created Exhibit 11 and explained that the information in the spreadsheet was extracted from the CCS eSIS 2010-2011 database after the database had been frozen and changes could no longer be made to it.

{¶ 14} Hal argues that Exhibit 11 does not constitute competent evidence and does not satisfy the rules of evidence. " 'Although administrative appeals to government agencies are required to comport with fundamental aspects of due process, they are not judicial proceedings.' " *MNH Truck Leasing Co., LLC v. Dir., Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 16AP-301, 2017-Ohio-442, ¶ 12, quoting *Rudd v. Ohio Dept. of Job & Family Servs.*, 2d Dist. No. 2015-CA-9, 2015-Ohio-3796, ¶ 13. "As a general rule, administrative agencies are not bound by the strict rules of evidence applied in court." *MNH Truck Leasing Co.* at ¶ 12, citing *H.K. Trading Ctr., Inc. v. Liquor Control Comm.*, 10th Dist. No. 09AP-293, 2010-Ohio-913, ¶ 41.

{¶ 15} Hal contends that since Exhibit 11 was altered after Ziemba created it by replacing the students' names with numbers, it could not be considered an original. Evid.R. 1001(3) provides that "[i]f data are stored in a computer or a similar device, any printout or other output readable by sight, shown to reflect the data accurately, is an 'original.' " Hal ignores Ziemba's testimony that other than the students' names, Exhibit 11 was identical to the exhibit he created. Ziemba compared Exhibit 11 to the original document (Exhibit 11(a)) he created during the hearing and found the information identical. Further, Ziemba testified that the student numbers corresponded to the student names reflected in the

---

[1] Subsequent to the 2010-2011 school year, CCS began using a database called Infinite Campus rather than eSIS.

[2] After Ziemba created Exhibit 11, the student names were exchanged for numbers to protect the students' identities. Ziemba testified that Exhibit 11 was identical to the exhibit he created except for the substitution of numbers for the names.

Confidential Student Key, which was Exhibit 3B. Ziemba testified that the grade changes in Exhibit 11 corresponded to the students' condensed reports (end of quarter or end of year report) that constituted Exhibit 12. Thus, the common pleas court did not err in finding that Exhibit 11 constituted reliable, probative, and substantial evidence.

{¶ 16} Hal further argues that the evidence demonstrated that the computer passwords were not secure and, thus, the evidence adduced at the hearing was not reliable. Hal testified that other employees used her computer and she saved her username and password in the system. She generally left her office door unlocked. She had seen someone using her computer remotely a couple times. Further, she believed once reassignment to a different building took place, all access to the student information from the former building was denied. Thus, once she transferred to Whetstone on June 6, 2011, she no longer had access to the information at Walnut Ridge. Finally, she testified that the principal at Walnut Ridge during the 2010-2011 school year admitted changing students' grades because the building was in academic distress and he had access to her computer.

{¶ 17} The hearing officer found that the testimony regarding the accessibility of usernames and passwords was such that it is possible that someone else made the changes on June 10, 2011. (Report and Recommendation, Findings of Fact No. 16.) And it appears the hearing officer concluded that the evidence was not reliable, probative, and substantial in order to find that Hal made the grade changes on June 10, 2011. However, the hearing officer found that regardless of the security of the computers, usernames, and passwords, Hal's testimony denying she made the grade changes on June 2, 2011 "is not credible." (Report and Recommendation, Findings of Fact No. 15.) Credibility determinations are within the province of the trier of fact because the trier of fact is in the best position to take into account inconsistencies, witnesses' mannerisms and demeanor, and to determine witness credibility. *Kabeer v. Purakaloth*, 10th Dist. No. 05AP-1122, 2006-Ohio-3584, ¶ 12. Thus, the fact that the username and passwords were not secure does not dictate an improper inference or a finding that the evidence at the hearing was unreliable.

{¶ 18} Hal also argues that the citation in the hearing officer's report and recommendation incorrectly cites the record of that hearing. The hearing officer's findings include:

> On or about June 6, 2011, Ms. Hal was reassigned to Whetstone
> High School. Ms. Hal testified that she would not have had

> remote computer access to Walnut Ridge records to make any grade changes in June 10. However, because Ms. Hal's user ID was used to change grades, Ms. Hal clearly has access regardless of the building she was assigned to. Based on the testimony regarding the accessibility of user names and passwords, it is also possible that someone else made the changes. The changes made on June 10 were to Student 5's grades. The June 10 changes did not appear to follow the same pattern of changes made on June 2 to all of the other students' grades. Tr. Vol. 3, p. 82; ODE exhibits 11, 11a.

(Report and Recommendation, Findings of Fact No. 16.)

{¶ 19} The above quote of the hearing officer's Report and Recommendation refers to Hal's testimony about her own Exhibit BB. Exhibit BB is a computer document that Hal created on June 10, 2011, while at Whetstone High School. Hall offered in support of her assertion that she was present at her new assignment at Whetstone on June 10, 2011 and that she did not have remote access to Walnut Ridge student information after being transferred to Whetstone. However, we view the transcript reference as reflecting that the hearing officer believed that Hal was at Whetstone on June 10, 2011, and that someone else may have made the changes on that date. But even if the hearing officer made reference to that specific page in the transcript in error, we cannot conclude that the record shows the evidence at the hearing was unreliable. Moreover, Hal testified it was necessary to complete a Change of Location form in order to gain access, but such a form she states she completed on her first day at Whetstone was not produced during trial.

{¶ 20} Finally, Hal takes issue with the statement of the hearing officer that Hal had access to a CCS computer on June 10, 2011, because there was no evidence of which computer Hal had access to on that date. We note that Hal's own Exhibit BB, submitted in an effort to demonstrate that she had access to a computer at Whetstone on that date, shows she had access to some computer in the school system on that date, which may have had an effect on the hearing officer's judgment of Hal's credibility. But as for the hearing officer's findings, Findings of Fact No. 16 and Conclusion of Law No. 6, contain this statement: "Based on the foregoing findings of fact, Ms. Hal's misconduct on *June 2, 2011* violated Principles 1 and 3 [of the State Board of Education Licensure Code of Professional Conduct for Ohio Educators in 2008]." (Emphasis added.) Thus, it is clear that the hearing officer

did not use the conduct that occurred on June 10, 2011 as a basis for finding Hal violated Principles 1 and 3.  Hal's first assignment of error is overruled.

{¶ 21}  In her second assignment of error, Hal contends that the common pleas court abused its discretion when it found on the one hand that the hearing officer did not craft her own definition of what grades mean but on the other hand found that ODE offered probative, reliable evidence to establish the meaning of grades and to explain what constitutes accurate grades.  Hal's argument is essentially that ODE did not present any evidence regarding what the students' grades at issue should have been in order to demonstrate that their recorded grades were not accurate.

{¶ 22}  Despite Hal's contention, a CCS employee did testify at the hearing about grades.  Laura Commodore, a CCS administrator, testified that CCS did not have a policy stating that grades could not be changed.  However, she testified that there were reasons for permitting grade changes, such as the teacher had inputted an incorrect grade, missing grades from the condensed grade report from transfer students, and changes to align the students' grades with policy where the students' grade calculations did not add together properly.  Hal highlights Commodore's testimony on this point to argue that grades are changed to "align with policy" in an effort to argue that there was no set policy and grades could be changed, therefore, ODE did not demonstrate what constitutes accurate grades.  However, Commodore testified that changes could be made to align with policy, but that was when the mathematical calculations were not accurate.  Commodore described the mathematical calculation for determining grades by assigning a number to the letter grade for each grading period (four points for an A, three points for a B, two points for a C, one point for a D, and zero points for an F).  The final grade was calculated by doubling each grading period, adding the points earned on the final exam and dividing the total by nine. *See also* Exhibit 10.

{¶ 23}  Hal testified that she believed it was important for grades to be accurate and to reflect what students have learned, to demonstrate what the student has mastered in the subject and to indicate such to the student, parents, and future teachers.  Hal further testified that the classroom teacher is the person responsible for determining a student's grade.  Hal also testified about what she understood to be "impermissible reasons" for

changing grades as "reasons that were not governed by the Board or sanctioned by the teacher." (Tr. Vol. III at 124.)

{¶ 24} Given this testimony, the common pleas court did not abuse its discretion in finding that the hearing officer did not craft her own definition of what grades mean and that ODE offered probative, reliable, and substantial evidence to establish the meaning of grades and to explain what constitutes accurate grades. Hal's second assignment of error is overruled.

{¶ 25} In her third assignment of error, Hal contends that the common pleas court abused its discretion in upholding the finding that Hal's behavior constituted conduct unbecoming to the teaching profession. Hal argues that the penalty she received was an arbitrary application of the law.

{¶ 26} The hearing officer, the Board, and the common pleas court relied on Ohio Adm.Code 3301-73-21(B)(1) and the Licensure Code in finding that Hal's behavior constituted conduct unbecoming to the teaching profession. Conversely, Hal argues an arbitrary and discriminatory application.

{¶ 27} R.C. 3319.31(B)(1) permits the Board to "suspend, revoke, or limit a license that has been issued to any person" for "[e]ngaging in an immoral act, incompetence, negligence, or conduct that is unbecoming to the * * * person's position." *Haynam v. Ohio State Bd. of Edn.*, 6th Dist. No. L-11-1100, 2011-Ohio-6499, ¶ 32, citing *Poignon v. Ohio Bd. of Pharmacy*, 10th Dist. No. 03AP-178, 2004-Ohio-2709. The Ohio Administrative Code augments the statute's implementation with specific factors for determining conduct that is "unbecoming." Ohio Adm.Code 3301-73-21(A) provides,

> (A) The state board of education shall consider, but not be limited to, the following factors when evaluating conduct unbecoming under division (B)(1) of section 3319.31 of the Revised Code:
>
> * * *
>
> (3) Crimes or misconduct involving academic fraud.

{¶ 28} The hearing officer specifically found that Hal's conduct on June 2, 2011, violated Principles 1 and 3 of the Licensure Code of Professional Conduct for Educators. Principle 1 provides that an educator serves as a positive role model to both students and adults and is responsible for preserving the dignity and integrity of the teaching profession

and for practicing the profession according to the highest ethical standards. Principle 1 lists as conduct unbecoming "[c]ommitting any violation of state or federal laws, statutes or rule, although the conduct may not have resulted in a criminal charge, indictment, prosecution or conviction." (Ex. 16.) Principle 3 provides that "[e]ducators shall accurately report information required by the local board of education or governing board, state education agency, federal agency or state or federal law." *Id.* Principle 3 lists conduct unbecoming as "falsifying, intentionally misrepresenting, willfully omitting or being negligent in reporting information regarding the evaluation of students and/or personnel." *Id.*

{¶ 29} The hearing officer specifically relied on these factors when evaluating Hal's conduct. Hal's argument is thus not meritorious that the hearing officer's finding was arbitrary, that is, that Hal engaged in conduct unbecoming in an arbitrary manner. Nor can we find that the common pleas court erred in affirming that finding. In the course of hearing the evidence at Hal's hearing, the hearing officer made a credibility determination, finding Hal not to be credible. As a result, based on the evidence adduced at the hearing, the hearing officer found Hal changed the grades on June 2, 2011, finding that behavior to constitute misconduct involving academic fraud and conduct unbecoming to her position as a teacher. Hal's third assignment of error is overruled.

{¶ 30} In her fourth assignment of error, Hal argues that the common pleas court erred as a matter of law in stating its review standard—that reliable, probative, and substantial evidence is a question of the absence or presence of the requisite amount of evidence. Hal contends that the common pleas court only referred to the amount of evidence and not the quality of the evidence and whether the evidence was probative.

{¶ 31} The common pleas court stated, "[d]etermining whether an agency's order or resolution is supported by reliable, probative and substantial evidence is a question of the absence or presence of the requisite amount of evidence. Although this is a legal question, it inevitably involves a consideration of the evidence and, to a limited extent would permit a substitution of judgment by the reviewing common pleas court." (Apr. 9, 2018 Decision at 16.) The common pleas court used this standard as it was reviewing the hearing officer's resolution of the evidentiary conflicts.

{¶ 32} This Court previously stated in *Beeler v. Franklin Cty. Sheriff*, 67 Ohio App.3d 748, 753 (10th Dist.1990), citing *Andrews v. Bd. of Liquor Control*, 164 Ohio St.

275 (1955), that "the determination of whether an agency order is supported by reliable, probative, and substantial evidence is primarily a question of the absence or presence of the requisite quantum of evidence." The *Beeler* court recognized that *Andrews* "pointed out that, while in essence this is a legal question, inevitably it involves a consideration of the evidence and to a limited extent would permit a substitution of judgment by the reviewing common pleas court." *Id.*

{¶ 33} In *Gallagher*, this Court stated that "a trial court's role in an administrative appeal 'is to determine whether the agency's decision is supported by a preponderance of substantial, reliable, and probative evidence.' " *Gallagher* at ¶ 16, quoting *Mathews v. Ohio State Liquor Control Comm.*, 10th Dist. No. 04AP-46, 2004-Ohio-3726, ¶ 11. In *Collins v. Ohio State Racing Comm.*, 10th Dist. No. 03AP-587, 2003-Ohio-6444, ¶ 23, this Court stated:

> "[T]he key term is 'preponderance.' If a preponderance of reliable, probative and substantial evidence exists, the Court of Common Pleas must affirm the agency decision; if it does not exist, the court may reverse, vacate, modify or remand." *Dudukovich v. Housing Auth.* (1979), 58 Ohio St.2d 202, 207, 389 N.E.2d 1113.

{¶ 34} The common pleas court appropriately stated and applied the standard of review to the hearing officer's determinations as adopted by the Board and found them to be supported by reliable, probative, and substantial evidence. The common pleas court examined the evidence and its probative value and did not simply find there was a certain amount of evidence as Hal suggests.

{¶ 35} Hal also argues that the hearing officer cited *Pang v. Minch*, 53 Ohio St.3d 186 (1990), and that it is not relevant to the facts in this case. While the facts in *Pang* are not similar to the facts in this case, the hearing officer cited *Pang* for the proposition that a preponderance of the evidence required that ODE must prove that it is more likely than not that the misconduct occurred and that the misconduct constituted conduct unbecoming a teacher. In *Pang*, the Supreme Court of Ohio quoted the Restatement of the Law 2d, Torts, 442, Section 433(B)(1), Comment a (1965), holding the meaning of the preponderance of the evidence to be that " 'it is more likely than not that the conduct of the defendant was a substantial factor in bringing about the harm.' " In light of this, we find that the hearing

officer did not err in citing *Pang* for this proposition. Hal's fourth assignment of error is overruled.

{¶ 36} In her fifth assignment of error, Hal contends that the common pleas court erred as a matter of law in finding that the sanction imposed by the Board is in accordance with law. In support of this, Hal argues that the hearing officer provided no legal basis for the conclusion that Hal's actions violated Principles 1 and 3 of the Licensure Code. Hal's argument is not clear. The hearing officer found that under the facts of this case, Hal's actions violated those principles. The hearing officer concluded that Hal's actions violated Ohio Adm.Code 3301-73-21(A) because she engaged in "crimes or *misconduct* involving academic fraud." (Emphasis added.) Hal argues that Exhibit 11 should not be taken at face value and as such there is not reliable, probative, and substantial evidence to support the findings. We have already addressed this argument and rejected it.

{¶ 37} The real crux of Hal's fifth assignment of error is her argument that there is no justification for such a severe penalty as was imposed on her by the Board. The Board denied Hal's applications for a 5-year professional principal license and 5-year professional special all grades teaching license. The Board ordered that Hal is ineligible to reapply for any license issued by the Board until on or after April 11, 2022 and only after Hal submits evidence that she has completed 16 hours of ethics training.

{¶ 38} R.C. 3319.31(B) authorizes the Board to refuse to issue a license to Hal or to suspend, revoke, or limit a license that has been issued to Hal for engaging in conduct that is unbecoming to the person's position. Ohio Adm.Code 3301-73-03(H) provides that "[d]isciplinary action under this chapter means a final disposition of an investigation by any professional licensing entity in this state or another jurisdiction. This can include, but is not limited to, a letter of admonishment, consent agreement, suspension, revocation, permanent revocation, limitation, denial or permanent denial of a license, or the voluntary surrender or voluntary denial of a license." Hal argues that the Board could have elected to impose a less severe penalty.

{¶ 39} It is well-settled that the reviewing court may not modify a sanction that is authorized by statute if the agency's order is supported by reliable, probative, and substantial evidence. *Henry's Café, Inc. v. Bd. of Liquor Control*, 170 Ohio St. 233 (1959), paragraphs two and three of the syllabus. "As a practical matter, courts have no power to

review penalties meted out by the commission. Thus, we have little or no ability to review a penalty even if it seems on the surface to be unreasonable or unduly harsh." *Goldfinger Ents., Inc. v. Ohio Liquor Control Comm.*, 10th Dist. No. 01AP-1172, 2002-Ohio-2770, ¶ 16.

{¶ 40} Statute (R.C. 3319.31(B)) and administrative law (Ohio Adm.Code 3301-73-03(H)) permit the Board to refuse to issue a license to Hal or to suspend, revoke, or limit a license that had been issued to her. The common pleas court did not err in finding the Board was authorized to sanction Hal and the sanction imposed was authorized by statute, and the findings of misconduct were supported by reliable, probative, and substantial evidence. We agree.

{¶ 41} Hal further argues that the Board was required to consider all mitigation factors listed in Ohio Adm.Code 3301-73-21(B) in determining the proper sanction. The common pleas court addressed this argument, finding that the mitigating circumstances listed in Ohio Adm.Code 3301-73-21 are factors that the Board may consider. Ohio Adm.Code 3301-73-21(B) provided at the time as follows:

> If the state board finds that a person has engaged in conduct unbecoming as described in paragraph (A) of this rule, then the state board may take the following mitigating and aggravating factors, as applicable and appropriate, into consideration when determining a final action under division (B)(1) of section 3319.31 of the Revised Code: [3]

{¶ 42} This administrative code section lists 14 factors. The hearing officer specifically considered some of the factors, such as, "the nature and seriousness of Ms. Hal's conduct," finding her conduct to be "serious." (Report & Recommendation, Conclusions of Law at ¶ 8.) The hearing officer also considered the aggravating factor that Hal did not disclose her misconduct to the Board. *Id.* Countering that, we note the hearing officer also found the lack of previous criminal activity or misconduct and Hal's excellent work activity to be mitigating factors. *Id.* at ¶ 9. Clearly, the hearing officer did consider mitigating and aggravating factors, not being required to consider every factor. We find no abuse of discretion by the common pleas court; nor did it err in affirming the Board's sanction. Hal's fifth assignment of error is overruled.

---

[3] Ohio Adm.Code 3301-73-21 was amended effective January 21, 2019.

{¶ 43} In her sixth assignment of error, Hal contends that the common pleas court erred as a matter of law by violating her due process rights. Hal specifically argues that the common pleas court's reliance on *Henry's Café* in finding that the sanction imposed by the Board was in accordance with law, violated her due process rights. Hal contends that the common pleas court should have modified the Board's sanction because it is too harsh.

{¶ 44} We already addressed the issue that when an administrative board's action is based on reliable, probative, and substantial evidence, and in accordance with law, a reviewing court may not modify the imposed sanction if it is authorized by law. In *Wolfe v. Accountancy Bd. of Ohio*, 10th Dist. No. 16AP-453, 2016-Ohio-8542, this court stated that "[t]he determination of the appropriate sanction in an administrative hearing is strictly for the agency." *Id.* at ¶ 16, citing *Reed v. State Med. Bd.*, 162 Ohio App.3d 429, 2005-Ohio-4071, ¶ 41 (10th Dist.).

{¶ 45} Hal attempts to distinguish *Henry's Café* on the basis that her professional license is at issue and education has been her passion and livelihood. However, this Court has applied *Henry's Café* in the arena of professional licenses. *See Shah v. State Med. Bd. of Ohio*, 10th Dist. No. 14AP-147, 2014-Ohio-4067 (upheld permanent revocation of medical license); *Kellough v. Ohio State Bd. of Edn.*, 10th Dist. No. 10AP-419, 2011-Ohio-431 (upheld permanent revocation of teaching license); *Wolfe* (upheld revocation of a Certified Public Accountancy certificate).

{¶ 46} Further, in *Goldberg v. Kelley*, 397 U.S. 254, 267 (1970), *superseded by statute on other grounds*, the United States Supreme Court held that due process in the administrative context requires, "[t]he fundamental requisite of due process of law is the opportunity to be heard." (Citations omitted.) Hal was afforded a hearing in this case.

{¶ 47} This Court previously addressed a due process argument regarding the failure to modify or overturn *Henry's Café*, as follows:

> As a court inferior to the Supreme Court of Ohio, we are bound by and must follow the decisions of that court. *State ex rel. Abrusci v. Indus. Comm.*, 10th Dist. No. 08AP-756, 2009-Ohio-4381, ¶ 5; *State v. Mickens*, 10th Dist. No. 08AP-743, 2009-Ohio-2554, ¶ 21; *State v. Worrell*, 10th Dist. No. 06AP-706, 2007-Ohio-2216, ¶ 10. Ohio appellate courts have no authority to declare unconstitutional a decision of the Supreme Court of Ohio. *State v. Howard*, 7th Dist. No. 08-MA-121, 2009-Ohio-6398, ¶ 49. Consequently, this court has

> repeatedly rejected appellants' requests that we modify or overrule *Henry's Café*. *Auchi v. Liquor Control Comm.*, 10th Dist. 06AP-493, 2006-Ohio-6003, ¶ 8, fn. 3; *Gehad & Mandi, Inc. v. Ohio State Liquor Control Comm.*, 10th Dist. No. 05AP-1181, 2006-Ohio-3081, ¶ 7; *Goldfinger Enterprises, Inc. v. Ohio Liquor Control Comm.*, 10th Dist. No. 01AP-1172, 2002-Ohio-2770, ¶ 22; *Lindner v. Ohio Liquor Control Comm.* (May 31, 2001), 10th Dist. No. 00AP-1430, 2001 Ohio App. LEXIS 2447. We do so again in this case.

*Kellough* at ¶ 58.

{¶ 48} We hold that the common pleas court did not err in relying on *Henry's Café* in Hal's case and Hal therefore was not denied due process. Hal's sixth assignment of error is overruled.

## IV. CONCLUSION

{¶ 49} For the foregoing reasons, Hal's six assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

DORRIAN and LUPER SCHUSTER, JJ., concur.