[Cite as *Badescu v. Badescu*, 2020-Ohio-4312.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Catalin S. Badescu, | : | |
| Plaintiff-Appellee, | : | No. 18AP-947 |
| | | (C.P.C. No. 16DR-2436) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Veronica V. Badescu, | : | |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on September 3, 2020

**On brief**: *Kemp Law Group, LLC*, and *Jacqueline L. Kemp*, for appellee.

**On brief**: *Veronica V. Badescu, pro se.*

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations

BROWN, J.

{¶ 1} Veronica V. Badescu, defendant-appellant ("mother"), appeals from the judgment entry of the Franklin County Court of Common Pleas, Division of Domestic Relations, in which the court issued a decision and judgment entry granting a decree of divorce and allocating parental rights and responsibilities.

{¶ 2} Mother and Catalin S. Badescu, plaintiff-appellee ("father"), were married in March 2010 in Virginia. Both parties had jobs in the Washington, D.C. area. They agreed to move to Centerville, Ohio, in January 2011 because father obtained a job in Dayton, Ohio. In 2012, after failing to find a new job, mother began studying at The Ohio State University in a combined Masters/Ph.D. program. The parties moved to Galloway, Ohio, to facilitate the commutes. In December 2014, mother obtained a master's degree (her second) and discontinued the Ph.D. program at The Ohio State University. Mother's

degree is in electrical engineering.  Her first master's degree specialty is in space systems operations and her second master's degree specialty is in system-level engineering, which means control systems and some signal processing.

{¶ 3}   In February 2015, the parties purchased a home in Dublin, Ohio.  Mother testified she did not want to purchase a house and that the parties did not intend to stay in Ohio long term.  The parties had a child, M.B., born in March 2015.  The parties' marriage began to deteriorate, and they had many disagreements especially concerning parenting styles.  These disagreements sometimes disintegrated into emotional and physical abuse by both parties.  Mother searched for employment at first in Ohio, but then widened her search.  She was unemployed from 2011-2016, other than a research assistant position while pursuing her Ph.D.  In April 2016, she received two job offers, one in Dayton and one in San Diego, California.  She accepted the job offer in California.  After mother accepted the job offer in California, father also looked into employment in California.  However, he did not want to move and start over in California.  The parties sought mediation to resolve the parenting issues regarding mother moving to California, but the mediation was unsuccessful.

{¶ 4}   On June 20, 2016, father filed a complaint for divorce in which he sought custody of M.B.  Mother filed a counterclaim for divorce and custody.  On July 14, 2016, a magistrate issued temporary orders granting permission for mother to temporarily take M.B. with her to San Diego and ordered a parenting-time schedule beginning with mother's relocation on July 15, 2016.  The parties commenced a parenting schedule where each parent was given alternating 30 days at a time.  Also, on July 14, 2016, a guardian ad litem ("GAL") was appointed.

{¶ 5}   On April 13 and August 30, 2018, the parties entered into partial divorce settlement agreements, agreeing to property division and spousal support, leaving the allocation of parental rights and responsibilities, visitation, and child support for the trial court to determine.  A trial was held on various dates from August 15 to 24, 2018, with both parties represented by counsel.  On November 28, 2018, the trial court issued a decision and judgment entry decree of divorce.  With regard to the allocation of parental rights and responsibilities, the trial court discussed the best interest of the child and analyzed the factors in R.C. 3109.04 and 3109.051.  The trial court found that it was in the best interest of the child that father be named residential parent and legal custodian and

found that parenting time should be as the parties agree, but if they could not agree, the court set forth a parenting-time schedule. The court further set forth orders regarding travel, communication, emergency decisions, child support, division of assets and liabilities.

{¶ 6} Mother, pro se, appeals the trial court's judgment, asserting the following two assignments of error:

> [I.] The trial court erred as a matter of law and abused its discretion by placing the initial burden on Mother to demonstrate the necessity of move and placing unfairly prejudicial weight on Mother's decision to live out of state, in violation of R.C. § 3109.03.

> [II.] The trial court erred in granting sole custody to Father by failing to assess the best interest of the child properly under Ohio law, including without undue emphasis on Mother's decision to move out of state.

{¶ 7} Mother's two assignments of error are related in that she argues the trial court erred in placing undue emphasis on her decision to move from Dublin, Ohio, to San Diego, California. Mother argues in her first assignment of error that the trial court erred when it placed the initial burden on her to demonstrate the necessity of moving and placed prejudicial weight on her decision to live out of state. Mother argues in her second assignment of error that the trial court erred when it granted sole custody to father by failing to assess the best interest of the child properly under Ohio law and placing undue emphasis on mother's decision to move out of state. Because they are related, we shall address these assignments of error together.

{¶ 8} In *Pallone v. Pallone*, 10th Dist. No. 17AP-409, 2017-Ohio-9324,¶ 36, citing *Parker v. Parker*, 10th Dist. No. 05AP-1171, 2006-Ohio-4110, ¶ 23, this court stated that a trial court must follow R.C. 3109.04 when deciding child custody matters but it has broad discretion when determining what is the appropriate allocation of parental rights and responsibilities. An appellate court affords a trial court's child custody determinations with some deference. " 'The discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record.' " *Pater v. Pater*, 63 Ohio

St.3d 393, 396 (1992), quoting *Miller v. Miller*, 37 Ohio St.3d 71, 74 (1988). Therefore, an appellate court will only reverse a trial court's custody determination if the trial court abused its discretion. *Parker* at ¶ 23.

{¶ 9} "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). Even under an abuse of discretion standard, however, " ' "no court has the authority, within its discretion, to commit an error of law." ' " *Shaw v. Underwood*, 10th Dist. No. 16AP-605, 2017-Ohio-845, ¶ 25, quoting *JPMorgan Chase Bank, N.A. v. Liggins*, 10th Dist. No. 15AP-242, 2016-Ohio-3528, ¶ 18, quoting *State v. Akbari*, 10th Dist. No. 13AP-319, 2013-Ohio-5709, ¶ 7. Thus, " '[a] court abuses its discretion when its ruling is founded on an error of law or a misapplication of law to the facts.' " *Independence v. Office of the Cuyahoga Cty. Executive*, 142 Ohio St.3d 125, 2014-Ohio-4650, ¶ 49 (O'Donnell, J., dissenting), quoting *Doe v. Natl. Bd. of Med. Examiners*, 199 F.3d 146, 154 (3d Cir.1999). *See also Hal v. Dept. of Edn.*, 10th Dist. No. 18AP-301, 2019-Ohio-5081, ¶ 11.

{¶ 10} Mother cites to excerpts of language the trial court used during the pretrial conference held on October 28, 2016. At the pretrial conference, the trial court stated:

> [T]he burden is on [mother] to demonstrate why she's upsetting the proverbial applecart.
>
> All right. I take this family as I see them, where they started from, and what decisions were made as a family to be. She's going to have to show me that she absolutely was not going to be able to pursue a career before I even get to the step if I'm going to allow a residential parent to be outside of this jurisdiction.
>
> * * *
>
> Again, it's family decisions that I'm going to look at. I'm starting in that basis here because I've heard from at least one side that we have two good parents and two involved parents.
>
> This child absolutely needs both of his parents. The reality is if the parents are going to live in the Midwest and the West Coast, his relationship with one of his parents is going to be significantly affected. That's the reality of it.

So you have a young child who isn't enmeshed into the community, so to speak, you know, we don't have him in school, we don't have him in Boy Scouts, we don't have all of those other kind of things that we look at, so I am -- you know, motivation for the move, as it were, is the first place I'm going to start looking at.

* * *

All I'm saying is that limited information I still have to pull from straws, right, because I don't have a representation here.

I feel [mother] starts with the burden, and then we go from there, because there's no good answers with respect to relocation.

So, of course, you know, the other things you have to look at is is there availability for your client to move closer there, that's going to be of interest to me as well and whether that --

But where I start with the premise that a family made a decision to follow dad somewhere to get a job and then mom went to school -- change the pronouns either way, it doesn't really matter whether it's a mom or dad kind of -- you know, I don't want to make it sound like, you know, I'm only thinking you follow a dad. Could be following a mom somewhere for a job. I think the burden is on the person who's packed up and moved to demonstrate to me why this jurisdiction is not the appropriate jurisdiction.

(Oct. 28, 2016 Tr. at 11-14.)

{¶ 11} Initially, we note the trial court quoted R.C. 3109.03, as follows: "When husband and wife are living separate and apart from each other, or are divorced, and the question as to the parental rights and responsibilities for the care of their children and the place of residence and legal custodian of their children is brought before a court of competent jurisdiction, they shall stand upon an equality as to the parental rights and responsibilities for the care of their children and the place of residence and legal custodian of their children, so far as parenthood is involved." The trial court also cited the 14 factors provided in R.C. 3109.051(D) and provided that it "has considered and addressed *all* statutory factors and has balanced all in making a determination as to [M.B.'s] best interest." (Emphasis sic.) (Decision at 5-6.)

{¶ 12} Further, we note that " '[i]t is axiomatic that a court speaks only through its journal entries, and not through mere oral pronouncements.' " *State v. Douglas*, 10th Dist. No. 13AP-570, 2014-Ohio-317, ¶ 5, quoting *State v. Huddleston*, 10th Dist. No. 12AP-512, 2013-Ohio-2561, ¶ 7, quoting *In re P.S.*, 10th Dist. No. 07AP-516, 2007-Ohio-6644, ¶ 12. Our review of the trial court's decision does not reveal any indication that the trial court improperly applied the burdens of proof or improperly placed prejudicial weight on mother's decision to live out of state or improperly applied the best interest of the child.

{¶ 13} Furthermore, when the entire pretrial transcript is read in context, rather than the excerpts mother focuses on, it is clear the trial court felt she had limited information at that point in the proceedings regarding the family unit and was interested in learning more information before deciding parental rights and responsibilities.

{¶ 14} R.C. 3109.04 provides factors that the trial court must consider in determining the best interest of the child, as follows:

> (A) In any divorce, legal separation, or annulment proceeding and in any proceeding pertaining to the allocation of parental rights and responsibilities for the care of a child, upon hearing the testimony of either or both parents and considering any mediation report filed pursuant to section 3109.052 of the Revised Code and in accordance with sections 3127.01 to 3127.53 of the Revised Code, the court shall allocate the parental rights and responsibilities for the care of the minor children of the marriage.
>
> * * *
>
> (B)(1) When making the allocation of the parental rights and responsibilities for the care of the children under this section in an original proceeding or in any proceeding for modification of a prior order of the court making the allocation, the court shall take into account that which would be in the best interest of the children.
>
> * * *
>
> (F)(1) In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:

(a) The wishes of the child's parents regarding the child's care;

(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code or a sexually oriented offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether

there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

(2) In determining whether shared parenting is in the best interest of the children, the court shall consider all relevant factors, including, but not limited to, the factors enumerated in division (F)(1) of this section, the factors enumerated in section 3119.23 of the Revised Code, and all of the following factors:

(a) The ability of the parents to cooperate and make decisions jointly, with respect to the children;

(b) The ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent;

(c) Any history of, or potential for, child abuse, spouse abuse, other domestic violence, or parental kidnapping by either parent;

(d) The geographic proximity of the parents to each other, as the proximity relates to the practical considerations of shared parenting;

(e) The recommendation of the guardian ad litem of the child, if the child has a guardian ad litem.

{¶ 15} Further, R.C. 3109.051(C) provides in determining to grant parenting time rights, a trial court shall consider a mediation report that is filed pursuant to R.C. 3109.11 or 3109.12 and shall consider all other relevant factors, including the factors listed in R.C. 3109.051(D), which provides, as follows:

In determining whether to grant parenting time to a parent pursuant to this section or section 3109.12 of the Revised Code or companionship or visitation rights to a grandparent, relative, or other person pursuant to this section or section 3109.11 or 3109.12 of the Revised Code, in establishing a specific parenting time or visitation schedule, and in

determining other parenting time matters under this section or section 3109.12 of the Revised Code or visitation matters under this section or section 3109.11 or 3109.12 of the Revised Code, the court shall consider all of the following factors:

(1) The prior interaction and interrelationships of the child with the child's parents, siblings, and other persons related by consanguinity or affinity, and with the person who requested companionship or visitation if that person is not a parent, sibling, or relative of the child;

(2) The geographical location of the residence of each parent and the distance between those residences, and if the person is not a parent, the geographical location of that person's residence and the distance between that person's residence and the child's residence;

(3) The child's and parents' available time, including, but not limited to, each parent's employment schedule, the child's school schedule, and the child's and the parents' holiday and vacation schedule;

(4) The age of the child;

(5) The child's adjustment to home, school, and community;

(6) If the court has interviewed the child in chambers, pursuant to division (C) of this section, regarding the wishes and concerns of the child as to parenting time by the parent who is not the residential parent or companionship or visitation by the grandparent, relative, or other person who requested companionship or visitation, as to a specific parenting time or visitation schedule, or as to other parenting time or visitation matters, the wishes and concerns of the child, as expressed to the court;

(7) The health and safety of the child;

(8) The amount of time that will be available for the child to spend with siblings;

(9) The mental and physical health of all parties;

(10) Each parent's willingness to reschedule missed parenting time and to facilitate the other parent's parenting time rights, and with respect to a person who requested companionship or visitation, the willingness of that person to reschedule missed visitation;

(11) In relation to parenting time, whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of the adjudication; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(12) In relation to requested companionship or visitation by a person other than a parent, whether the person previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether the person, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of the adjudication; whether either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent previously has been convicted of an offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that the person has acted in a manner resulting in a child being an abused child or a neglected child;

(13) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(14) Whether either parent has established a residence or is planning to establish a residence outside this state;

(15) In relation to requested companionship or visitation by a person other than a parent, the wishes and concerns of the child's parents, as expressed by them to the court;

(16) Any other factor in the best interest of the child.

{¶ 16} In this case, the trial court specifically considered each factor of R.C. 3109.04(F)(1)(a) through (j), 3109.04(F)(2), and 3109.051, weighed the evidence, and made determinations. R.C. 3109.04(F)(1)(j) requires the court to consider whether either parent has established a residence outside the state. Further, R.C. 3109.04(F)(2)(d) requires the trial court when considering whether shared parent is appropriate to consider the geographic proximity of the parents. Thus, the trial court was required to consider the circumstances regarding mother's move to San Diego.

{¶ 17} The trial court thoroughly explored the required factors to determine M.B.'s best interest. The trial court recognized that both parties wanted to be the legal custodian and residential parent for M.B. Each party wished the other would move to live in the same city. The trial court found M.B. was only three years old and too young to express his wishes. The trial court determined that M.B. is well-bonded with both parents and has significant relationships with extended family on both sides. The trial court found M.B. is very adjusted to his home and neighborhood and children in his father's neighborhood and M.B. is involved in extracurriculars with his daycare. Father limits M.B.'s time on electronics and instead spends time bike riding, playing with neighborhood children, going to the park behind their house, the splash park, COSI, and Franklin Park Conservatory. Father works at keeping M.B. on a schedule.

{¶ 18} With a 30-day visitation schedule, M.B. has also adjusted to mother's home and pre-school in San Diego. Mother lives in a gated community that has two pools and is close to the ocean. M.B. has his own room and they have a dog. Mother takes M.B. to Balboa Park, the beach, the amusement park, the neighboring wildlife preserve, and the petting zoo. Mother arranges play dates for M.B. Mother plans to stay in the area where she currently lives.

{¶ 19} The trial court found that both homes are appropriate and adequate for raising M.B., and both provide wonderful opportunities, excellent infrastructures and high quality of life, such as parks and recreation, good school systems, and extracurricular activities. Both parents advocated that each location was able to provide for M.B.'s best interest. The trial court found that both parents excel in their ability to provide for M.B.'s basic needs. The trial court did find that father's home and neighborhood were more familiar for M.B. and filled with neighbors and children M.B.'s age that he has known for most of his life and will go to the same schools.

{¶ 20} The trial court found both parties and M.B. enjoy good physical health. When examining the mental health of the parties, the trial court acknowledged that both parties expressed concern about the other party's mental health and emotional stabilities. The parties had psychological evaluations conducted and the psychologist determined that both parents had a good relationship with their son, but father should be designated school placement parent with mother receiving extended visitation time during the summer. The psychologist suggested it would be best for mother to move back to central Ohio and, if so, recommended an equally shared parenting plan. Mother argues this finding by the psychologist demonstrates that the improper burden placed on her to demonstrate the move to San Diego was necessary was adopted by the psychologist. We note that the psychologist's report was a joint exhibit submitted by the parties and mother did not object to its admission and did not call him for cross-examination. The trial court did carefully consider each party's evaluations, especially the personality profiles and tendencies to determine which parent was more likely to consistently put M.B.'s best interest first.

{¶ 21} The trial court observed father was more likely to facilitate parenting rights and visitation based on the finding that father plans and works hard to facilitate mother's SKYPE calls and mother did not do the same. The trial court found R.C. 3109.04(F)(1)(g), (h), and (i) not relevant factors to these facts.

{¶ 22} The trial court acknowledged that mother lives in San Diego and plans to remain there. Father currently lives in Dublin and plans to remain there until M.B. graduates from high school. The trial court specifically found mother was not credible regarding her testimony that she did not agree to purchase a home in Dublin and to raise her son in Dublin. The trial court stated: "[t]hese parties are extremely intelligent and intensely thoughtful individuals who clearly value education and as such, [mother's] contention that she did not fully consent to [father's] desire to purchase this home and that she/they did not significantly investigate the neighborhood, surrounding daycares and/or make all such considerations regarding raising and educating their child here is simply not credible or in line with [mother's] manner of making life decisions." (Decision at 3-4.) Subsequently the trial court stated: "[t]he [mother] is not credible in her testimony that she did not fully agree to the choice for the parties to purchase their home

in Dublin and to raise their son there or in her (now) criticism of [father's] long work commute." (Decision at 12.)

{¶ 23} Despite the fact that mother believes it is in M.B.'s best interest for father to move to San Diego, a vocational expert hired by mother testified that although father could find a reasonable job opportunity, there would be a loss of benefits and specialization. The best fit for his experience and qualifications were at Edwards Air Force Base, approximately three hours outside San Diego. In that situation, father would still be exercising long-distance parenting.

{¶ 24} The trial court found the parties could not cooperate and make joint decisions because mother refuses to communicate with father other than through the My Family Wizard app. Prior to trial, the parties were only communicating via e-mail or text messages. Mother would not answer father's telephone calls.

{¶ 25} The trial court found that father is the parent most cognizant of M.B.'s need to share love, affection, and contact with the other parent. Father testified he focuses M.B. for his SKYPE calls with mother and prepares him emotionally and physically for the exchanges between the households. Mother argues the SKYPE recordings that father made without her knowledge should not have been shown at trial. However, mother failed to object at trial. In *Dillon v. Waller*, 10th Dist. No. 95APE05-622 (Dec. 26, 1995), this court stated: "[a]lleged errors which arise during the course of a trial, which are not brought to the attention of the court by objection or otherwise, are waived and may not be raised upon appeal." *Dillon* citing *Stores Realty Co. v. Cleveland*, 41 Ohio St.2d 41, 43 (1975). Moreover, the videotapes were not the only evidence that was a basis for the trial court's decision.

{¶ 26} The trial court found that "it is hard to imagine that [mother's] overt dislike and distancing from [father] does not (even if unconsciously) spill over to [M.B.]. While this trier of fact has tried countless high conflict divorces and custody disputes, the visceral anger and negative reaction of [mother's] body language and voice inflection when talking about [father] stands out as memorable." (Decision at 14.) The trial court noted that mother did not include father as a contact when she enrolled M.B. in daycare in San Diego. Further, the trial court found father credible when he testified that mother's actions during exchanges with M.B. indicates she does not emotionally prepare him for transitioning to his father. *Pallone* at ¶ 26. Such determinations of credibility

and the weight to be given to the evidence are for the trial court. *Bechtol v. Bechtol*, 49 Ohio St.3d 21, 23 (1990), *syllabus corrected*, 51 Ohio St.3d 701 (1990). The trial court as the factfinder may choose to believe or disbelieve any witness, and " 'court is free to accept or reject, in whole or in part, the testimony or opinions of any witness, whether accepted as an expert or not and determine the weight and credibility to be given thereto.' " *Pallone* at ¶ 26 quoting *Jackson v. Jackson*, 5th Dist. No. 03-CA-17, 2004-Ohio-816, ¶ 21, citing *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. "On the trial of a case, either civil or criminal, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *DeHass* at paragraph one of the syllabus.

{¶ 27} Regarding whether there is a history or potential for abuse, the trial court acknowledged these parties admitted they argued frequently. Several times the arguments escalated and there was mutual inappropriate verbal and inappropriate physical contact. On one occasion, father kicked mother and broke her tailbone. The trial court found it notable that father is able to demonstrate self-awareness and is regretful for his actions and failings during the marriage but there is no sense of that from mother.

{¶ 28} The trial court found the geographic distance between the parties and their inability to make joint decisions make shared parenting an unworkable plan in this case.

{¶ 29} The GAL recommended the current 30-day on/30-day off parenting schedule continue until M.B. enters kindergarten and father be named residential parent and legal custodian and then mother's summer parenting time be extended to two full months. During trial, the GAL was specifically asked if mother had stayed and father had moved, whether the GAL would recommend mother as the legal custodian. The GAL responded: "[i]f all the other facts worked the same way, yes." However, he clarified that the distinction for him was not that one party had moved but, rather, "it's about the impact of one parent moving 2,300 miles away on the relationship of the child with the other parent. It's a subtle, but, to me, a very significant difference." (Tr. Vol. VI at 1008.) Mother argued the GAL did not do a thorough job in this case. The GAL conducted an investigation, visited each home, interviewed family members, issued a report and attended trial, including participating and testifying at trial, subject to cross-examination. The trial judge, as trier of fact, was entitled to believe or disbelieve the GAL's testimony and to consider it in the context of all the evidence before the court. In its role as fact

finder, a trial court may choose to believe or disbelieve any witness. *H.R. v. L.R.*, 181 Ohio App.3d 837, 2009-Ohio-665, ¶ 15 (10th Dist.), citing *State v. White*, 118 Ohio St.3d 12, 2008-Ohio-1623, ¶ 71. Mother has failed to point to any particular finding that is unreasonable or otherwise unsupported by the evidence because of improper reliance on the testimony of the GAL.

{¶ 30} When examining M.B.'s, mother's and father's available time, the trial court acknowledged that father lives in Dublin and works in Dayton, therefore, he commutes every day for work, but he does have some ability to adjust his start and stop times to be available for M.B. Mother has more flexibility regarding her schedule and is within walking distance of M.B.'s preschool and is in close proximity of the other schools.

{¶ 31} The trial court found that R.C. 3109.051(D)(8), (14), and (15) were not applicable factors.

{¶ 32} When considering any other factor in the best interest of the child, the trial court considered that both parties made financial arguments regarding which location was better. Each party believed his/her employment was a bigger priority over the other party's employment. The trial court determined that mother's decision to accept employment across the country from father was a decision made in her best interest, not M.B.'s best interest. However, the trial court stated that this decision/factor should not be viewed as the "only or even as the deciding factor, as there are other factors, including but not limited to the parties' psychological evaluations and as otherwise noted herein which support this Court's final determination of [M.B.'s] best interest." (Decision at 17.) The trial court did not find credible that mother was unable to find employment in the central Ohio area, especially since she had a job offer in Dayton at the time she accepted the job in San Diego. The trial court stated: "[d]espite her arguments to the contrary, while perhaps not as 'perfect fit' as her current employment or as desired of career path it pushes credibility that this intelligent, hard-working, ambitious individual could not have found sustainable employment in the Central Ohio area *if* she had really wanted to." (Emphasis sic.) (Decision at 5.)

{¶ 33} Given the thorough examination of the factors, the GAL report and testimony, and the psychologist's report and testimony involved in this case, the trial court did not abuse her discretion in determining what is in M.B.'s best interest. Several times the trial court found mother's testimony not credible. " 'The choice between credible

witnesses and their conflicting testimony rests solely with the finder of fact, and an appellate court may not substitute its own judgment for that of the finder of fact.' " *Doe v. Vineyard Columbus*, 10th Dist. No. 13AP-599, 2014-Ohio-2617, ¶ 24, quoting *Cuyahoga Metro. Housing Auth. v. Davis*, 197 Ohio App.3d 411, 2011-Ohio-6162, ¶ 33 (8th Dist.).

{¶ 34} The trial court made a well-reasoned decision with respect to the custody of M.B. based on the testimony and evidence produced at trial. The trial court specifically stated that it "carefully observed each witness's demeanor, gestures, and voice inflections during his/her testimony in determining the credibility of and weighing the testimony and evidence presented." (Decision at 3.) The court noted the difficulty it faced in formulating a reasonable parenting plan because of the distance between the parties. In making its custody order, the court relied on the best interest factors contained in R.C. 3109.04 and 3109.051. The court concluded and was well within its discretion that it was in M.B.'s best interest for father to be residential parent and legal custodian. There is no indication the trial court placed a burden on mother to demonstrate the necessity of moving or placed unfairly prejudicial weight on her decision to live out of state. While mother disagrees with the trial court's determination, we have reviewed the record and cannot say the trial court's decision constitutes an abuse of discretion. Mother's first and second assignments of error are overruled.

{¶ 35} Accordingly, we overrule mother's two assignments of error and affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations.

*Judgment affirmed.*

KLATT and DORRIAN, JJ., concur.

_____