[Cite as *Klickovich v. State Med. Bd. of Ohio*, 2025-Ohio-2783.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Robert Klickovich, | : | |
| Appellant-Appellant, | : | No. 24AP-446 |
| | | (C.P.C. No. 23CV-7860) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| State Medical Board of Ohio, | : | |
| Appellee-Appellee. | : | |

D E C I S I O N

Rendered on August 7, 2025

**On brief:** *Dinsmore & Schohl, LLP, Elizabeth Y. Collis*, and *Heidi W. Doarn*; *Statman Harris, LLC, Alan J. Statman*, and *William B. Fecher*, for appellant. **Argued:** *William B. Fecher*.

**On brief:** *Dave Yost*, Attorney General, *Iris L. Jin, Daniel G. Wilson, Brandon W. Puckett*, and *Kyle C. Wilcox*, for appellee. **Argued:** *Iris L. Jin*.

APPEAL from the Franklin County Court of Common Pleas

BEATTY BLUNT, J.

{¶ 1} Appellant-appellant, Robert Klickovich, appeals from the judgment of the Franklin County Court of Common Pleas vacating the October 11, 2023 amended order of appellee-appellee, State Medical Board of Ohio (the "Board"), finding that appellant engaged in sexual misconduct with a patient, in violation of R.C. 4731.22(B)(6) and Adm.Code 4731-26-02, and remanding the matter to the Board for further proceedings. (July 8, 2024 Jgmt. Entry.) For the reasons that follow, we reverse and remand this matter to the trial court for further proceedings.

## I. Facts and Procedural History

{¶ 2} The salient facts of this matter are essentially undisputed. On or around April 2017, appellant began to date a person ("Patient 1") for whom he subsequently provided

medical treatment. This medical treatment included treating Patient 1 for a dog bite and prescribing her antibiotics; treating Patient 1 for a sinus infection and prescribing antibiotics; treating Patient 1 for a cold sore and prescribing an antiviral medication; and administering Botox injections into Patient 1's face on at least four occasions. It is likewise undisputed that at some point early in the personal relationship between appellant and Patient 1, the relationship became sexual, and that sexual relationship continued between 2017 and 2020.

{¶ 3}   The Board subsequently investigated the matter and on November 10, 2021, it issued a notice of opportunity for hearing, alleging that appellant had engaged in sexual misconduct with Patient 1 between June 2017 and August 2020, in violation of R.C. 4731.22(B)(20) and Adm.Code 4731-26-02 (relating to sexual misconduct), and R.C. 4731.22(B)(6) (relating to failure to conform to minimal standards of care). (Nov. 10, 2021 Notice; Nov. 30, 2023 Record of Proceedings, State's Ex. 3 at 1.) Appellant requested a hearing on or about December 6, 2021.

{¶ 4}   On December 15 and 16, 2022, the Board conducted a hearing. On September 12, 2023, the hearing examiner submitted to the Board a report and recommendation, which included proposed findings and a proposed order. The proposed findings determined that appellant had engaged in sexual misconduct in violation of R.C. 4731.22(B)(6) and Adm.Code 4731-26-02. Specifically, the proposed findings state:

> Between May 2017 and August 2020, Dr. Klickovich engaged in a personal and sexual relationship with Patient 1. Simultaneously, between November 17, 2018 and January 4, 2020, Dr. Klickovich provided medical treatment to Patient 1, including prescribing antibiotics, an antiviral, and at least four separate instances of Botox injections. In addition, at unknown times, Dr. Klickovich provided Patient 1 with sample medications such as muscle relaxers, anti-inflammatory medication, and migraine medication.

(Sept. 12, 2023 Report and Recommendation at 7-9.) The hearing examiner recommended in the proposed order that appellant's medical license be suspended for 60 days, followed by probation, and that appellant be fined $6,000.

{¶ 5}   On October 11, 2023, the Board issued an amended order adopting the proposed findings and amending the proposed order to a reprimand and probation, and on

November 2, 2023, appellant appealed the Board's October 11, 2023 amended order to the Franklin County Court of Common Pleas.

{¶ 6} On July 8, 2024, the trial court issued its judgment entry and decision vacating the amended order by the state medical board and remanding for further proceedings. (July 8, 2024 Jgmt. Entry.) In its decision, the trial court did not make any findings as to whether the Board's amended order was supported by reliable, probative, and substantial evidence. (See *id*.) Instead, the trial court determined that the Board's amended order fails to make a necessary finding, to wit: whether appellant exploited the licensee-patient relationship with Patient 1 as set forth in Adm.Code 4731-26-01(H). (*Id*. at 1, 7-9.) The trial court vacated the Board's amended order and remanded it to the Board with instructions to review the existing record and (1) determine whether there was exploitation in the first instance, and (2) "address the reason for its determination by either stating the physician-patient relationship is inherently exploitative or by identifying the facts that compel a finding of exploitation (or not)." (*Id*. at 7.)

{¶ 7} This timely appeal followed and is now before us.

## II. Assignment of Error

{¶ 8} Appellant asserts the following two assignments of error for our review:

> [1.] The trial court erred in remanding the case back to the Board instead of simply vacating the Board's Order.

> [2.] The trial court erred in failing to address each of Dr. Klickovich's assignments of error.

## III. Law and Analysis

### A. Standard of Review

{¶ 9} In an administrative appeal brought pursuant to R.C. 119.12, the common pleas court must consider the entire record to determine whether reliable, probative, and substantial evidence supports the Board's order and whether the order is in accordance with law. *Univ. of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 110-111 (1980). Reliable, probative, and substantial evidence has been defined as follows:

> (1) "Reliable" evidence is dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true. (2) "Probative" evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue. (3) "Substantial"

evidence is evidence with some weight; it must have importance and value.

*Our Place, Inc. v. Ohio Liquor Control Comm.*, 63 Ohio St.3d 570, 571 (1992).

{¶ 10} The common pleas court's " 'review of the administrative record is neither a trial *de novo* nor an appeal on questions of law only, but a hybrid review in which the court "must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof." ' " *Edmands v. State Med. Bd.*, 2017-Ohio-8215, ¶ 10 (10th Dist.), quoting *Lies v. Ohio Veterinary Med. Bd.*, 2 Ohio App.3d 204, 207 (1st Dist. 1981), quoting *Andrews v. Bd. of Liquor Control*, 164 Ohio St. 275, 280 (1955). The trial court "must give due deference to the administrative resolution of evidentiary conflicts," although "the findings of the agency are by no means conclusive." *Conrad* at 111. The common pleas court conducts a de novo review of questions of law, exercising its independent judgment in determining whether the administrative order is " 'in accordance with law.' " *Ohio Historical Soc. v. State Emp. Relations Bd.*, 66 Ohio St.3d 466, 471 (1993), citing R.C. 119.12.

{¶ 11} By contrast, an appellate court's review of an administrative decision is more limited than that of the common pleas court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993). The appellate court is to determine only whether the common pleas court abused its discretion. *Id.*; *Lorain City School Dist. Bd. of Edn. v. State Emp. Relations Bd.*, 40 Ohio St.3d 257, 261 (1988).

{¶ 12} A trial court abuses its discretion when it exercises its judgment in an unwarranted way regarding a matter over which it has discretionary authority. *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35. The term "abuse of discretion," " ' commonly employed to justify an interference by a higher court with the exercise of discretionary power by a lower court, implies not merely error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency.' " (Emphasis deleted.) *Id.*, quoting *Black's Law Dictionary* (2d Ed. 1910). Put another way, an abuse of discretion occurs when a court's judgment is unreasonable, arbitrary, or unconscionable. *State ex rel. McCann v. Delaware Cty. Bd. of Elections*, 2018-Ohio-3342, ¶ 12; *State v. Beavers*, 2012-Ohio-3654, ¶ 8 (10th Dist.).

{¶ 13} On issues of fact, absent an abuse of discretion, this court may not substitute its judgment for that of the administrative agency or the trial court. *Pons* at 621. However,

even under an abuse of discretion standard, no court is authorized, within its discretion, to commit an error of law. *Badescu v. Badescu*, 2020-Ohio-4312, ¶ 9 (10th Dist.). Thus, a court abuses its discretion when its ruling is based on an error of law or a misapplication of law to the facts. *Id.*

{¶ 14} Furthermore, "[a]n appellate court's scope of review on issues of law is plenary, including the issue of whether the common pleas court applied the proper standard of review." *Bartchy v. State Bd. of Edn.*, 2008-Ohio-4826, ¶ 43, citing *Univ. Hosp., Univ. of Cincinnati College of Medicine v. State Emp. Relations Bd.*, 63 Ohio St.3d 339, 343 (1992). We have previously found that "[a] trial court's application of a standard of review when reviewing an administrative order is a question of law, which we review de novo." *Johnson v. Ohio Fair Plan Underwriting Assn.*, 2007-Ohio-6505, ¶ 4 (10th Dist.), citing *Beck v. Dept. of Commerce, Div. of Fin. Insts.*, 2006-Ohio-60, ¶ 7 (12th Dist.); *Univ. of Cincinnati College of Med.*, 63 Ohio St.3d at 343.

### B. Discussion

{¶ 15} In appellant's first assignment of error, he asserts the trial court erred in remanding the case to the Board instead of simply vacating the Board's order. We agree the trial court erred in remanding the matter to the Board but disagree that the trial court erred in failing to vacate the Board's order. Instead, we find the trial court erred in failing to conduct the appropriate review of the record and determining whether reliable, probative, and substantial evidence supports the Board's order and whether the order is in accordance with law, as explained below.

{¶ 16} We begin by addressing appellant's argument that the trial court erred in remanding this matter to the Board because it lacked the authority to do so in the first instance. The Supreme Court of Ohio has held that common pleas courts reviewing an administrative decision may remand the cause for further proceedings, including a new hearing. *State ex rel. Chagrin Falls v. Geauga Cty. Bd. of Commrs.*, 2002-Ohio-4906, reaffirming *Superior Metal Products, Inc. v. Admr., Ohio Bur. of Emp. Servs.*, 41 Ohio St.2d 143, 146 (1975) ("This court holds that the power to reverse and vacate decisions necessarily includes the power to remand the cause to the decision maker."). This court has likewise acknowledged that a remand for further proceedings may be appropriate in some circumstances. *Citizens for Akron v. Ohio Elections Comm.*, 2011-Ohio-6387, ¶ 30

(10th Dist.). Therefore, appellant's arguments in support of his position that the trial court had no authority to remand the matter for further findings are meritless.

{¶ 17} Notwithstanding the foregoing, this does not end the inquiry. The broader question is *should* the trial court have remanded the matter for further proceedings, i.e., for the Board to determine whether appellant's conduct "exploited the licensee-patient relationship" with Patient 1. The answer is no, because under the pertinent administrative rules governing sexual misconduct, there is no need for any specific finding of whether appellant's conduct exploited his relationship with Patient 1. Instead, as explained below, the trial court should have conducted a review of the record to determine whether the order finding sexual misconduct was supported by reliable, probative, substantial evidence, and was otherwise in accordance with law.

{¶ 18} Chapter 4731 of the Revised Code vests the Board with broad authority to regulate the medical profession in Ohio, and to discipline physicians for non-compliant conduct. *Griffin v. State Med. Bd. of Ohio*, 2009-Ohio-4849 (10th Dist.). This includes the authority to impose a wide range of sanctions, pursuant to R.C. 4731.22, ranging from reprimand to revocation. "The discretion granted to the board in imposing a wide range of potential sanctions reflects the deference due to the board's expertise in carrying out its statutorily granted authority over the medical profession." *Demint v. State Med. Bd. of Ohio*, 2016-Ohio-3531, ¶ 63 (10th Dist.).

{¶ 19} Pursuant to R.C. 4731.22(B)(6), the Board may discipline a licensee for the licensee's "departure from, or the failure to conform to, minimal standards of care of similar practitioners under the same or similar circumstances, whether or not actual injury to a patient is established." And, pursuant to R.C. 4731.22(B)(20), the Board also may discipline a licensee for violating any rule adopted by the Board. As pertinent here, Adm.Code 4731-26-02(A) prohibits sexual misconduct, "as that term is defined in paragraph (H) of Rule 4731-26-01 of the Administrative Code," between a licensed physician and a patient. In turn, Adm.Code 4731-26-01(H) defines the term "sexual misconduct," in pertinent part, as follows:

> "Sexual misconduct" *means* conduct that *exploits the licensee-patient relationship in a sexual way*, whether verbal or physical, and may include the expression of thoughts, feelings, or gestures that are sexual or that reasonably may be construed by a patient as sexual.

(Emphasis added.)

{¶ 20} The court's primary goal of statutory construction is to give effect to the legislative intent. *Silver Lining Group EIC Morrow Cty. v. Ohio Dept. of Edn. Autism Scholarship Program*, 2017-Ohio-7834, ¶ 34 (10th Dist.), citing *State v. Banks*, 2011-Ohio-4252, ¶ 13 (10th Dist.), citing *State v. Hairston*, 2004-Ohio-969, ¶ 11. "To determine legislative intent, we first look to the language of the statute." *Id.*, citing *Hubbell v. Xenia*, 2007-Ohio-4839, ¶ 11, citing *State ex rel. Burrows v. Indus. Comm.*, 1997-Ohio-310. The statutory language must be considered in context, and the court must construe words and phrases "according to the rules of grammar and common usage." (Citations omitted.) *Silver Lining Grp.* at ¶ 34.

{¶ 21} Where the words in a statute are " 'free from ambiguity and doubt, and express plainly, clearly and distinctly, the sense of the law-making body, there is no occasion to resort to other means of interpretation.' " *Id.*, citing *Hairston* at ¶ 12, quoting *Slingluff v. Weaver*, 66 Ohio St. 621 (1902), paragraph two of the syllabus. " 'It is only where the words of a statute are ambiguous, uncertain in meaning, or conflicting that a court has the right to interpret a statute.' " *Id.* at ¶ 35, quoting *In re Adoption of Baby Boy Brooks*, 136 Ohio App.3d 824, 829 (10th Dist. 2000). An ambiguity exists only "if the language of a statute is susceptible of more than one reasonable interpretation." *Id.*, citing *Columbus v. Mitchell*, 2016-Ohio-7873, ¶ 6 (10th Dist.).

{¶ 22} Courts "apply the rules of statutory construction to administrative rules as well." *McFee v. Nursing Care Mgt. of Am., Inc.*, 2010-Ohio-2744, ¶ 27, citing *State ex rel. Brilliant Elec. Sign Co. v. Indus. Comm.*, 57 Ohio St.2d 51, 54 (1979) (finding the "ordinary meaning rule" of statutory construction applies equally to administrative rules). Thus, " '[t]he interpretation of statutes and administrative rules should follow the principle that neither is to be construed in any way other than as the words demand.' We must read undefined words and phrases in context and construe them in accordance with rules of grammar and common usage." *State ex rel. Turner v. Eberlin*, 2008-Ohio-1117, ¶ 14, quoting *Morning View Care Ctr.-Fulton v. Dept. of Human Servs.*, 2002-Ohio-2878, ¶ 36 (10th Dist.).

{¶ 23} Courts lack authority to ignore the plain and unambiguous language of a statute under the guise of statutory interpretation or liberal or narrow constructions. *State ex rel. Massie v. Bd. of Edn. of Gahanna-Jefferson Pub. Schools*, 76 Ohio St.3d 584, 588

(1996). Instead, a court's duty is to give effect to the words used in a statute, not to delete or insert words. *State v. Maxwell*, 2002-Ohio-2121, ¶ 10. "If we were to brazenly ignore the unambiguous language of a statute, or if we found a statute to be ambiguous only after delving deeply into the history and background of the law's enactment, we would invade the role of the legislature: to write the laws." *Jacobson v. Kaforey*, 2016-Ohio-8434, ¶ 8. Thus, if "the language of a statute is plain and unambiguous and conveys a clear and definite meaning there is no occasion for resorting to rules of statutory interpretation," because "[a]n unambiguous statute is to be applied, not interpreted." *Sears v. Weimer*, 143 Ohio St. 312, paragraph five of the syllabus.

{¶ 24} The Supreme Court has recently underscored the foregoing tenet that unambiguous statutes are to be applied and not interpreted. In *TWISM Ents., L.L.C. v. State Bd. of Registration for Professional Engineers & Surveyors*, 2022-Ohio-4677, the high court first discussed and ultimately rejected the oft-cited proposition of law that courts must "defer to an administrative agency's reasonable interpretation of a statute, or its reasonable interpretation of an ambiguous statute." *TWISM Ents., L.L.C.* at ¶ 42. Instead, the court declared that while "a court *may* consider an administrative agency's construction of a legal text in exercising its duty to independently interpret the law . . ., an administrative interpretation should never be used to alter the meaning of clear text. *If the text is unambiguous, the court should stop right there.*" (Emphasis added.) *Id*. at ¶ 44.

{¶ 25} The Supreme Court went on to explain when consideration of an agency's interpretation of a statute or rule might be warranted:

> In assessing the persuasiveness of an agency interpretation, it is appropriate for a court to keep in mind the respective competencies of the agency and the judiciary. When it comes to interpretation of text involving common words used in their ordinary sense, there will rarely, if ever, be a need for a court to look to an agency interpretation. This task is routinely performed by courts and is well within the judiciary's core competence. On the other hand, in a specialized matter that involves technical meaning uniquely within the competency of the agency, the agency's expertise might prove helpful to a court in its interpretive task. *See Sarasota Mem. Hosp. v. Shalala*, 60 F.3d 1507, 1511 (11th Cir.1995). Even then, it remains the judiciary's role to independently interpret the law; the weight to be given the agency interpretation depends on its persuasiveness.

*Id.* at ¶ 47. Thus, where a statute or administrative rule is clear and unambiguous, our task is not to *interpret* it at all—with or without any consideration of the administrative agency's view of its meaning—but rather to construe and apply it according to its plain language.

{¶ 26} Under the rules of statutory construction, the use of the word "means" in defining the term "sexual conduct" has the clear import that this is the exclusive meaning of the term. Indeed, the use of the word "means" in defining "sexual misconduct" results in the term and its definition being interchangeable equivalents. *Diller v. Diller*, 2021-Ohio-4252, ¶ 39 (3d Dist.). Put another way, there can be no finding of "sexual misconduct" in the absence of "conduct that exploits the licensee-patient relationship in a sexual way" because they are one in the same thing. Adm.Code 4731-26-01(H). Thus, in this case, when the Board found that appellant had engaged in sexual misconduct via his relationship with Patient 1, it necessarily found that his conduct had exploited his relationship with Patient 1.

{¶ 27} In *Diller*, the Third District Court of Appeals aptly explained the important difference between the use of the words "means" and "includes" in statutory definitions as follows:

> Forms of the words "includes" and "means" are frequently used to introduce the text of statutory definitions. "The terms 'means' and 'includes' are not necessarily synonymous." *Helvering v. Morgan's, Inc.*, 293 U.S. 121, 125 . . . (1934), fn. 1. "The word 'includes' is usually a term of enlargement, and not of limitation." 2A N. Singer, S*utherland Statutes and Statutory Construction*, Section 47:7 (7th Ed.). "[T]he term 'including' is not one of all-embracing definition, but connotes simply an illustrative application of the general principle." *Fed. Land Bank of St. Paul v. Bismarck Lumber Co.*, 314 U.S. 95, 100 . . . (1941). Thus, "[w]hen a definitional section says that a word 'includes' certain things, that is usually taken to mean that it may include other things as well." Scalia & Garner, *Reading Law: The Interpretation of Legal Texts*, 226 (2012); *see Kish v. Akron*, 109 Ohio St.3d 162, 2006-Ohio-1244, ¶ 20 . . . ("[T]he General Assembly's use of 'includes' in R.C. 149.011(G) as a preface to the definition of 'records' is an indication of expansion rather than constriction, restriction, or limitation * * *."); *Helvering* at 125, fn. 1 (observing that use of some form of the word "includes" "indicates that the particular is not necessarily a substitute for the general term, excluding more general meanings included within its scope"); *Argosy Ltd. v. Hennigan*, 404 F.2d 14, 20 (5th

Cir.1968) (noting that the word "includes" "conveys the conclusion that there are other items includable, though not specifically enumerated by the statutes").

By contrast, when 'a definitional section says that a word 'means' something, the clear import is that this is its *only* meaning." (Emphasis sic.) Scalia & Garner, *Reading Law: The Interpretation of Legal Texts*, 226 (2012). Therefore, " '[a]s a rule, [a] definition which declares what a term "means" * * * excludes any meaning that is not stated.' " *Burgess v. United States*, 553 U.S. 124, 130, quoting *Colautti v. Franklin*, 439 U.S. 379, 392-393 . . . (1979), fn. 10; *see Groman v. Commissioner of Internal Revenue*, 302 U.S. 82, 86 . . . (1937) ("[W]hen an exclusive definition is intended the word 'means' is employed, * * * whereas here the word used is 'includes.' "). A statutory definition declaring what a term "means" is less susceptible of extension by construction than a definition declaring what a term "includes." *See* 2A N. Singer, *Sutherland Statutes and Statutory Construction*, Section 47:7 (7th Ed.). ***Where a form of the word "means" is employed to define a term, "the term and its definition are to be interchangeable equivalents[.]"*** *Helvering* at 125, fn. 1.

(Emphasis added.) *Diller* at ¶ 38-39. Thus, as previously noted, if the Board makes a finding of sexual misconduct—as it did in this case—then the Board has also implicitly made a finding of exploitation of the licensee-patient relationship. There simply cannot be sexual misconduct without exploitation.

{¶ 28} We acknowledge that in the previous case of *Seman v. State Med. Bd. of Ohio*, 2020-Ohio-3342 (10th Dist.), we declined to resolve the issue of "whether the trial court was ultimately correct in concluding proof of explicit exploitation was not required to constitute a violation of the sexual misconduct rule" because in that case, the trial court had found ample evidence of exploitation in the record upon its review. *Seman* at ¶ 34. We now hold that a finding of sexual misconduct necessarily includes a finding of exploitation. Thus, if the record contains reliable, probative, and substantial evidence of exploitation and the order is otherwise in accordance with law, the trial court must affirm the Board's order finding sexual misconduct.

{¶ 29} Therefore, based on the foregoing, the trial court erred as a matter of law when it found the Board failed to make the necessary finding as to whether appellant's conduct exploited the licensee-patient relationship. The trial court likewise erred in

vacating the Board's order on that basis and remanding the matter for further proceedings to make the finding. As such, this court must reverse the judgment of the trial court and remand the matter to the trial court for further proceedings so it may conduct the proper review as set forth in R.C. 119 in the first instance. That is, the trial court must consider the entire record to determine whether reliable, probative, and substantial evidence supports the agency's order finding a violation of the sexual misconduct rule, which includes finding evidence of exploitation, and whether the order is in accordance with law.

{¶ 30} Accordingly, based on the foregoing, we sustain in part and overrule in part appellant's first assignment of error.

{¶ 31} In his second assignment of error, appellant asserts the trial court erred in failing to address each of appellant's assignments of error. Because we have already determined that this matter must be remanded for further proceedings as discussed above, appellant's second assignment of error is rendered moot, and we need not address it. *Croce v. Ohio State Univ. Bd. of Trustees*, 2024-Ohio-2138, ¶ 67 (10th Dist.), quoting *State v. Gideon*, 2020-Ohio-6961, ¶ 26 (" '[A]n assignment of error is moot when an appellant presents issues that are no longer live as a result of some other decision rendered by the appellate court.' "), and App.R. 12(A)(1)(c) (an appellate court must decide each assignment of error " '[u]nless an assignment of error is made moot by ruling on another assignment of error' ").

## IV. Disposition

{¶ 32} For the foregoing reasons, we sustain in part and overrule in part appellant's first assignment of error; we find appellant's second assignment of error moot; and the judgment of the Franklin County Court of Common Pleas vacating the amended order of the Board and remanding the matter to the Board for further findings is reversed and remanded to the trial court with instructions to perform the review of the record required by the statutory standard of review applicable to the trial court as set forth in R.C. 119.12.

*Judgment reversed;*
*cause remanded with instructions.*

EDELSTEIN and DINGUS, JJ., concur.

_____